ACCEPTED
12-14-00254-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
3/26/2015 11:26:53 AM
CATHY LUSK
CLERK

# APPEAL NO. 12-14-00254-CV

## IN THE COURT OF APPEALS
## TWELFTH APPELLATE DISTRICT
## TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

3/26/2015 11:26:53 AM

CATHY S. LUSK
Clerk

**Neurodiagnostic Tex, L.L.C.**
**Appellant,**

**v.**

**Robert "Josh" Pierce and Synergy IOM, L.L.C.,**
**Appellees.**

---

**Appealed from the 7th Judicial District Court of**
**Smith County, Texas, Cause No. 13-3357-A**
**the Honorable Kerry L. Russell Presiding**

---

## APPELLANT'S REPLY BRIEF
## TO APPELLEE ROBERT "JOSH" PIERCE'S OPENING BRIEF

---

Wigington & Dankesreiter, L.L.P.
Eric F. Dankesreiter
State Bar No. 00796434
Debra S. Crafton
State Bar No. 24050458
3010 Broadmoor Lane
Flower Mound, Texas  75202
Tel. (972) 691-3677
Fax (972) 691-5688
Attorneys for Appellant,
Neurodiagnostic Tex, L.L.C.

**Appellant requests oral argument**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................iii

SUMMARY OF THE ARGUMENT..................................................1

ARGUMENT .................................................................................1

I. **Reply Point No. 1**: There had not been an adequate time for discovery at the time summary judgment responses were due.............................1

    A. **Sub-Point 1**: NeuroTex was diligent in pursuing discovery under the Scheduling Order.................................................................1

    B. **Sub-Point 2:** The discovery issues raised in NeuroTex's brief were before the trial court.................................................................2

    C. **Sub-Point 3:** NeuroTex's motion and brief are sufficient..............4

    D. **Sub-Point 4:** The trial court abused its discretion in denying the continuance.................................................................5

II. **Reply Point No. 2:** The trial court erred in failing to grant NeuroTex's Special Exceptions.................................................................8

III. **Reply Point No. 3**: Synergy's late-filed summary judgment evidence should not have been considered by the trial court.............................9

    A. **Sub-Point 1:** Unauthenticated exhibit should have been stricken........9

    B. **Sub-Point 2:** Hearing transcript should have been stricken.............10

IV. **Reply Point No. 4:** The Covenant Not to Compete is ancillary to an otherwise enforceable agreement.................................................10

    A. **Sub-Point 1:** Training is an interest worthy of protection.............11

    B. **Sub-Point 2:** Training is reasonably related to the interest in restraining competition.................................................................14

   C. **Sub-Point 3:** Surgeon preferences are interests worthy of protection..................................................................15

V.  **Reply Point No. 5:** The restraints included in the noncompete are in compliance with the Act.................................................16

VI.  **Reply Point No. 6:** Pierce breached the covenant..........................17

VII.  **Reply Point No. 7:** The Court shall reform the covenant if restraints are unreasonable.........................................................17

VIII.  **Reply Point No. 8:** Damages are not foreclosed by statute on the breach of contract claim........................................................19

PRAYER.............................................................................19

CERTIFICATE OF SERVICE.....................................................20

## INDEX OF AUTHORITIES

**CASES:**

*Alex Sheshunoff Mgmt. v. Johnson*, 209 S.W.3d 644, 648 (Tex. 2006).....11, 12, 14

*Arabesque Studios, Inc. v. Academy of Fine Arts Int'l*, 529 S.W.2d 564, 569 (Tex.App.—Dallas 1975, no writ) .................................................7

*BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex.2002) ...........1

*Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 469 (Tex. App. – Houston [14th Dist.] 2005)......................................................2

*Correa v. Houston Surgical Assistant Svcs., Inc.*, No. 14-12-01050-CV, 2013 WL 3958499 at *6-7 (Tex.App.—Houston [14th Dist.] July 30, 2013, no pet.)(mem.op.).....................................................15

*Daytona Grp. Of Tex., Inc. v. Smith,* 800 S.W.2d 285, 290 (Tex.App.—Corpus Christi 1990, writ denied). ...............................................................12, 13, 14

*Evans World Travel, Inc. v. Adams,* 978 S.W.2d 225, 231 (Tex.App.—Texarkana 1998, no pet.) ...............................................................................................13

*Gray Wireline Serv., Inc. v. Cavanna,* 374 S.W.3d 464, 470 (Tex.App.-Waco 2011, no pet.). .....................................................................................................18

*Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d 657, 662 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.). ................................................................13

*Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex. 1984) (emphasis added)..............5

*Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex. 2004)............1

*Light v. Centel Cellular Co.,* 883 S.W.2d 642, 647 (Tex.1994) ...................11, 15

*Marsh USA Inc. v. Cook,* 354 S.W.3d 764 (Tex.2011).............................10, 15

*McConathy v. McConathy,* 869 S.W.2d 341, 342 (Tex.1994) .........................10

*Moore v. K-Mart Corp.,* 1998 WL 337773 at *3 (Tex.App.—San Antonio, June 24, 1998, n.w.h.)...................................................................................9

*Saye v. Garrar,* 204 S.W. 684, 686 (Tex.Civ. App.—Texarkana 1918, writ ref'd...............................................................................................................7, 8

*Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.,* 414 S.W.3d 911, 920 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ............................................18

*United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 (1958) ..................5

*Welsh v. Morris,* 16 s.W.744, 745 (1891)...............................................7

**RULES:**

TEX. R. CIV. P. 166a(g) ....................................................................4

**STATUTES:**

TEX. BUS. & COM. CODE §15.50(a). .....................................14, 16, 17, 19

TEX. BUS. & COM. CODE § 15.51(c).........................................6, 17, 19

## SUMMARY OF THE ARGUMENT

Appellant files this Reply to clarify select legal arguments and factual inaccuracies set forth in Appellee's Opening Brief, without waiving any of the arguments made in Appellant's Brief ("App. Brief").

## ARGUMENT

**Reply Point No. 1:** **There had not been an adequate time for discovery at the time summary judgment responses were due.**

As Appellee Robert "Josh" Pierce ("Pierce") recognized in his Brief, whether an adequate time for discovery has occurred is case specific. Appellant ("NeuroTex") set forth the nonexclusive factors used by Texas courts in deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex.2002). Appellee wholly ignores these factors in his Opening Brief ("Response").

> **Sub-Point 1: NeuroTex was diligent in pursuing discovery under the Scheduling Order.**

In its Brief, NeuroTex applied the evidence before the Court to the established factors to show that length of time the case has been on file, the materiality and purpose of the discovery sought, and that it exercised due diligence

1

in seeking to obtain the discovery. (App. Brief 17-20); *see also Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 469 (Tex. App. – Houston [14th Dist.] 2005).

It is clear that, contrary to Pierce's argument, NeuroTex's recitation of the deadlines set forth in the Scheduling Order is not a complaint of the time limitations, but to show that the trial court abused its discretion in denying the motion for continuance as, given the length of time the case had been on file and the deadlines in the trial court, NeuroTex had exercised "due diligence" in attempting to obtain the needed discovery. *Id.*

### Sub-Point 2: The discovery issues raised in NeuroTex's brief were before the trial court.

As an initial matter, Pierce attempts to mislead this Court by stating that the depositions NeuroTex referred to in its motions for continuance had occurred. (Response 7). In fact, they had not occurred by the time NeuroTex was required to submit its evidence to the trial court in its summary judgment responses. The motions for continuance filed by NeuroTex show that the deposition of Dr. Brent Alford was set for Tuesday, June 10, 2014, and Dr. George Cravens's deposition was scheduled for June 13, 2014. (CR 769; 775). NeuroTex's summary judgment responses were due and submitted on June 5, 2014. (CR 854; 1038).

Furthermore, in the motion for continuance, denied by the trial court,

2

NeuroTex not only argued that it needed the deposition testimony of Dr. Brent Alford, it also argued that the documentary evidence it was seeking to compel would enable it to support its claims for damages, specifically lost profits. (CR 770, 776). Pierce falsely claims that neither the list of discovery or arguments related to this discovery were presented to the trial court. A cursory review of the list of discovery sought, included in NeuroTex's Brief along with the record cites to each item, clearly shows that a motion to compel these very specific documents was pending before the trial court. (App. Brief 17-20). Furthermore, these documents would enable NeuroTex to support its claim for damages, specifically lost profits, as such documents included detailed information regarding insurance payments made to Synergy for services provided by Pierce (CR 128); as well as Synergy's detailed monthly Profit and Loss statements and general ledger. (*Id.*). Clearly Synergy's failure to respond to discovery resulted in a lack of evidence related to NeuroTex's claims against both Pierce and Synergy, thus the need for both an order compelling discovery and a continuance.

Pierce also argues that NeuroTex never "raised the same complaint" in the trial court, thus it cannot now complain about the lack of discovery. This is an appeal of a summary judgment where the trial court's failure to rule on multiple motions related to discovery is key. At the time NeuroTex's summary judgment responses were due there had been no denial of NeuroTex's motion to compel, in

3

fact, the trial court never ruled on that motion. Thus, NeuroTex's discovery arguments were "raised" in its motion to compel and motions for continuance which were before the trial court and cited to as part of the record. (CR 99-139; 769-770; 776).

**Sub-Point 3: NeuroTex's motion and brief are sufficient.**

Pierce next argues that NeuroTex's motion for continuance and its Brief, are insufficient; this is inaccurate and misleading. First, Pierce claims that NeuroTex, "merely stated a need for evidence of 'lost profits,' without specifics." (Response 8). To the contrary, in its motion, NeuroTex explained that it had filed suit against Pierce for breach of a covenant not to compete and breach of fiduciary duty. (CR 769). NeuroTex explained that it was seeking documents and depositions which would enable it to support its claims for damages, specifically lost profits, and that Dr. Alford's deposition was likely to produce evidence related to Pierce's breach. (CR 769-70).

Texas Rule of Civil Procedure 166a(g) permits the trial court to deny a summary judgment or order a continuance to permit discovery to be obtained when a nonmovant can make an affidavit of proof showing why he cannot present facts to justify his opposition. NeuroTex's verified motion for continuance satisfies this requirement.

4

Likewise, NeuroTex's Brief sets forth over six pages of analysis as to why denial of the continuance was improper and addressed the factors used in deciding whether a trial court has abused its discretion in making such a ruling. (App. Brief 15-21). In his response, Pierce misstates the facts and ignores the prevailing law, the analysis, and NeuroTex's evidence. NeuroTex's brief is more than adequate to preserve this point for appeal.

**Sub-Point 4: The trial court abused its discretion in denying the continuance.**

Pierce generally argues next that NeuroTex did not need any information it sought in discovery and cites to an incomplete list of the discovery missing. (Response 9). To the contrary, NeuroTex clearly identified the documents it was seeking and explained the relevance in both of its motions for continuance. (App. Brief 15-21).

The law is clear that the primary objective of discovery is to ensure that lawsuits are "decided by what the facts reveal, not by what facts are concealed." *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (emphasis added). As noted by the United States Supreme Court, the purpose of the modern discovery and pretrial procedures are to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

5

Synergy failed to produce any documents in response to NeuroTex's discovery requests and responded to the majority of the requests for production stating, "Synergy is not responding to this request." (CR 104). It is disingenuous now for Pierce to hide behind Synergy who, after refusing to produce any documentation whatsoever, now claims that NeuroTex should have produced its own documents.

Without legal or evidentiary support, Pierce summarily argues that the evidence sought in the continuance was unnecessary as damages were "absolutely barred by the Act" as a result of unreasonable restraints. Pierce's reliance is misplaced. First, there has been no determination by the court that the geographic restrictions are unreasonable or impose a greater restraint than necessary; and, second, upon a finding of unreasonableness, the court must reform the covenant. Tex. Bus. & Comm. Code §15.51(c). The trial court made no such finding, nor did they reform the covenant. Lastly, Pierce has presented no legal basis to support his theory that damages for breach of fiduciary duty are foreclosed by the Covenant Not to Compete Act.

Next, Pierce ignores the evidence that was before the Court and makes the all-encompassing statement that NeuroTex should have presented its own evidence of damages but did not. To the contrary, the evidence presented by NeuroTex is more than a scintilla, which precludes a no-evidence summary

6

judgment. (App. Brief 67-68).

Although it has repeatedly denied the fact that NeuroTex suffered damages, Synergy refused to produce documents in response to NeuroTex's request for production. (CR 104). Now Pierce argues that Synergy's financial information is immaterial. His cites to testimony regarding loss of business are not evidence that there were no damages, instead, such testimony supports the need for ongoing discovery. (Response 10-11).

In its brief, NeuroTex explained why evidence of Synergy's profits are relevant to the damage it suffered here. (App. Brief 59, 67). In an attempt to distance itself from the prevailing law, Pierce narrowly applies the facts of *Arabesque Studios, Inc. v. Academy of Fine Arts Int'l*, 529 S.W.2d 564, 569 (Tex.App.—Dallas 1975, no writ) to the facts before this Court. He claims that because the departing employee in *Arabesque* "lured away" the customers, evidence of the new employer's profits would only apply if NeuroTex shows that Pierce "lured away" its business. (Response 12-13). To the contrary, *Arabesque* stands for the age-old proposition of law that it is proper for the jury to consider profits made by the subsequent employer of the defendant inasmuch as these profits may have, in some part, accrued to plaintiff in the absence of the breach. *Arabesque*, 529 S.W.2d at 569, citing *Welsh v. Morris*, 16 S.W.744, 745 (1891)

and *Saye v. Garrar*, 204 S.W. 684, 686 (Tex.Civ. App.—Texarkana 1918, writ ref'd).

Finally, Pierce now claims that he stopped working for NeuroTex *months after* NeuroTex was no longer being assigned by hospitals to Dr. Alford's and his group's surgical cases, thus, again, Synergy's documentary information is unnecessary. (Response 12). This is simply false. To the contrary, Pierce performed IOM services for Dr. Alford through August of 2013, while Pierce began talking to Alford about working for him in September. (CR 278; 1022-23).

None of the arguments relied upon by Pierce support the trial court's ruling and the trial court erred in refusing to grant a continuance of the summary judgment hearing.

**Reply Point No. 2:**      **The trial court erred in failing to grant NeuroTex's Special Exceptions.**

NeuroTex reurges its arguments, as set forth in its summary judgment response and Special Exceptions cited to therein.

In its brief, NeuroTex clearly challenges the sufficiency of Pierce's motion on the ground that he failed to state the cause of action and the specific elements to which he claims NeuroTex has no evidence. (App. Brief 24). In response, <u>Pierce makes no effort to identify the claim and the specific element on which there is no evidentiary support</u>. For example, Pierce states, "Boldery presents no

8

evidence as to the confidential information or proprietary information of Plaintiff."
(Response 15). However, Pierce fails to identify any claim to which "confidential
information or proprietary information" is an essential element.

As NeuroTex previously argued, there is a distinction between factual
allegations and elements of the claim; failure to prove an element results in a
failure of the cause of action, whereas, as is the case here, the failure to prove a
factual allegation, in and of itself, does not result in failure of the cause of action.
*Moore v. K-Mart Corp.,* 1998 WL 337773 at *3 (Tex.App.—San Antonio, June
24, 1998, n.w.h.). Since Pierce's motion for summary judgment fails as a matter
of law for insufficiency, the trial court erred in granting his motion for summary
judgment.

**Reply Point No. 3:** **Pierce's incompetent summary judgment evidence should not have been considered by the trial.**

**Subpoint 1: Unauthenticated exhibit should have been stricken.**

Pierce admits that Exhibit 7 attached to his Motion for Summary Judgment
was not competent summary judgment evidence. (Response 17). While he argues
that consideration of this evidence does not warrant reversal as that document is
cumulative of other evidence and not controlling, there is nothing in the record to
support his claim.

9

**Subpoint 2: Hearing transcript should have been stricken.**

NeuroTex has also challenged the trial court's decision to consider, as summary judgment evidence, testimony included in an incomplete transcript from a pretrial hearing that does not identify the speaker. Pierce argues that Appellant had the ability to look to documents outside the record to establish the relevancy and reliability of the testimony. In support, he cites to the Court's decision in *McConathy v. McConathy*, 869 S.W.2d 341, 342 (Tex.1994). There, however, the Court was reviewing the authentication of deposition transcripts, not the reliability of unidentified speakers in a transcript used as summary judgment evidence. *Id.* Pierce has cited to no case law that supports the facts before this Court on this issue.

**Reply Point No. 4:     The Covenant Not to Compete is ancillary to an otherwise enforceable agreement.**

There is no dispute that, to be "ancillary to or part of" an otherwise enforceable agreement:  1) the consideration given by the employer in the agreement must be reasonably related to the interest the employer is trying to protect with the covenant; and, 2) the covenant must have been designed to enforce the employee's consideration or return promise. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764 at 773 (Tex.2011)

As to the first element, Pierce admits that NeuroTex provided Pierce

10

consideration in the form of: (1) training; (2) customer information, including surgeon preference; 3) pricing; and 4) technique. (Response 23).

**Sub-point 1: Training is an interest worthy of protection.**

The initial dispute here, however, is Pierce's claim that the training he received was not an interest worthy of protection since NeuroTex "merely" paid the cost of Pierce's certification training. (CR 822-23, 834-35). (Response 24).

Pierce cites to *Alex Sheshunoff Mgmt. v. Johnson*, 209 S.W.3d 644, 650 (Tex. 2006), for the proposition that the payment of money is not a protectable interest. (Response 24). This is not what the *Sheshunoff* Court said. In the portion of *Sheshunoff* relied upon by Pierce, the Court is evaluating whether the consideration given in a noncompete was illusory. *Sheshunoff*, 209 S.W.3d at 650. The actual statement by the Court was as follows:

> "[T]he consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing," [*Light v. Centel Cellular Co.*, 883 S.W.2d 642, 647 (Tex.1994)], and if this particular consideration is never provided by the employer, the covenant not to compete cannot be enforced. Absent such consideration, the covenant is not "ancillary to or part of the otherwise enforceable agreement" under the Act as interpreted by Light. To hold otherwise would mean that an employer could enforce a covenant merely by promising to pay a sum of money to the employee in the agreement, a result inconsistent with Light's requirements that the covenant must give rise to the employer's interest in restraining the employee from competing and the covenant must be

11

designed to enforce the employee's consideration or return promise. *Sheshunoff*, 209 S.W.3d at 650 (emphasis added).

Pierce's recitation of the facts is also flawed. Although Pierce points out in his Response that he actually paid for the cost of training, he previously testified that NeuroTex paid for him to receive his training. (Response 24). (CR 911, 165). Furthermore, in addition to paying for the training, Boldery testified that she had "spent considerable time training and preparing Pierce for his board examinations." (CR 856-57; 1110-1111). This is uncontroverted.

Pierce next argues that the training provided by NeuroTex was not an interest worthy of protection and relies upon several cases—all of which are misapplied and all of which fail to support his argument.

First, Pierce makes the misleading statement that NeuroTex is claiming "all work-related training" is worthy of protection. (Response 24, citing *Daytona Grp. Of Tex., Inc. v. Smith*, 800 S.W.2d 285, 290 (Tex.App.—Corpus Christi 1990, writ denied)). As the facts before this Court show, Pierce's IOM training was very specialized. The ruling in *Daytona* is inapplicable to the facts here as there the court determined that the training program was not unique as it consisted primarily of video tapes and other aids which were purchased on the open market, and did not "encompass any novel or special training." *Daytona*, 800 S.W.2d at 290-91. It is important to note that the *Daytona* Court specifically explained that, "This case

12

does not present the situation where a highly trained employee with unique skills leaves to compete with a former employer." *Id.* at 291. Such is the case here.

Next, Pierce relies on a case heard before the San Antonio Court of Appeals, and claims that the case stands for the general proposition that "training given to emergency room physicians was not a protectable interest because it belongs to the employee." (Response 24, citing *Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d 657, 662 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.)). This case was fact specific, and in *Potyka* the "training" received by the physicians was considered general knowledge; the *Potyka* court explained that the result might be different if the training methods and procedures were developed by and known exclusively to the employer. *Id.*

Pierce's last case found that the "general housekeeping" training in a travel agency was not specialized, so it did not rise to the "level required in order for one to perform the core job duties expected which should be protected by restrictive covenants." *Evans World Travel, Inc. v. Adams,* 978 S.W.2d 225, 231 (Tex.App.—Texarkana 1998, no pet.). Again, this has no value to his argument.

None of the cases cited to by Pierce apply to the very specialized training he received from NeuroTex in becoming one of only 300 triple-board certified in the country. (CR 894-95). NeuroTex has provided both this Court and the trial court with specific evidence of the type of training which occurred here, including

13

testimony from Pierce that the training he received relates directly to the work that he is now doing for Synergy. (CR 846-57; 918; 920; 1110-11; 1172; 1174). While Pierce apparently now dismisses this work, the evidence shows that this is just the type of specialized training courts have found protectable. *Daytona*, 800 S.W.2d at 290-91.

Pierce also relies heavily on the fact that NeuroTex's "advancement of funds" has been fully repaid. (Response 27). This is irrelevant, as the Court in *Sheshunoff* explained, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement *at the time the agreement is made.* 209 S.W.3d at 651; *see also* Tex. Bus. & Comm. Code § 15.50(a). Any subsequent performance under the agreement is immaterial.

**Sub-point 2: Training is reasonably related to the interest in restraining competition.**

Without any case law to support its proposition, Pierce claims that the covenant not to compete must be designed to enforce Pierce's promise regarding training. (Response 27). This is an incorrect analysis of the applicable law. As explained in Appellant's Brief in more detail, the consideration given by the employer in the agreement (training; proprietary information; financial information; customer information, and procedures and techniques used by NeuroTex) must only be **reasonably related** to the interest *in restraining*

14

*competition* with the employer. (App. Brief 43-48; *see also* CR 855,859; 1109-1113); *Marsh*, 354 S.W.3d 764 at 775 (*overruling Light*, 883 S.W.2d 642 at 647). Clearly, NeuroTex was seeking to protect such information from being used against it by a competitor such as Synergy. Furthermore, Pierce has acknowledged receiving such confidential information. (CR 918; 1172).

**Sub-point 3: Surgeon preferences are interests worthy of protection.**

Although Pierce makes multiple arguments challenging the interests worthy of protection, NeuroTex's arguments in its Brief sufficiently address these claims.

However, NeuroTex supplements its argument here regarding surgeon preferences. In his Response, Pierce makes the blanket statement that surgeon preferences are not an interest worthy of protection as Dr. Alford is free to disclose to anyone what he likes and dislikes a monitoring technician to do in surgery. (Response 36). With no legal basis, he surmises that "a surgeon's preferences are not an interest of Appellants that is worthy of protection via a covenant." *Id.* This is a misstatement of the law.

The Houston Court of Appeals addressed this issue and determined that information about surgeon preferences is confidential information that gives an employer a competitive advantage as there is "no need to ask such questions during surgery, thus the employee is a partner to the surgeon and makes the surgery easier." *Correa v. Houston Surgical Assistant Svcs., Inc.*, No. 14-12-

15

01050-CV, 2013 WL 3958499 at \*6-7 (Tex.App.—Houston [14th Dist.] July 30, 2013, no pet.)(mem.op.).

**Reply Point 5:** **The restraints included in the noncompete are in compliance with the Act.**

**Time Restraints.** The covenant at issue here seeks to restrain Pierce from competing within a certain region for five years, and from diverting or attempting to divert any existing or future business of NeuroTex for a period for two years. (CR 867-868; 1121-1122). While this Court has found covenants for two to five to be a reasonable restriction, it is particularly reasonable in this instance as more fully explained in Appellant's Brief. (App. Brief 50-51).

**Geographic Restraints.** Pierce's argument that the geographic restrictions in the noncompete are unreasonable is overbroad. The evidence presented to the trial court shows that, in 2005, *at the time the agreement was made*, NeuroTex either worked in or had prospective business in the counties included within the covenant not to compete. (CR 855-861; 1109-1115); *see* Tex. Bus. & Comm. Code § 15.50(a). Consequently, Pierce agreed not to compete with NeuroTex in the counties in which the parties either knew, or anticipated he would work while employed by NeuroTex. (CR 867; 1121). This restraint on the geographic area included in the covenant is reasonably limited as the case law cited in Appellant's Brief dictates. (App. Brief 52-55).

16

**Scope of Activities.** NeuroTex has thoroughly set forth the reasonableness of this restraint in its Brief. Pierce was an IOM technician for NeuroTex; he is an IOM technician for Synergy. NeuroTex is seeking to prevent Pierce from performing IOM services for its competitors, within a certain area and for a certain time. Pierce's argument that this is overbroad is nonsensical. It is important to remember that *at the time the agreement was made,* both NeuroTex and Pierce agreed that this was reasonable. Tex. Bus. & Comm. Code § 15.50(a).

**Reply Point 6:**       **Pierce breached the covenant.**

In its summary judgment response, NeuroTex was required to set forth more than a scintilla of evidence that Pierce breached the covenant not to compete. NeuroTex's response more than met its burden. (CR 1103-04).

**Reply Point 7:**       **The Court shall reform the covenant if restraints are unreasonable.**

Section 15.51(c) of Covenant Not to Compete Act provides that *if* the covenant is found to be ancillary to or part of an otherwise enforceable agreement *but* contains restraints that are not reasonable and impose a greater restraint than necessary, *the court shall reform* the covenant to the extent necessary and enforce the covenant as reformed. Tex. Bus. & Comm. Code § 15.51(c) (emphasis added). As an initial matter, there were no findings entered by the trial court and the trial court did not reform the agreement.

Pierce argues that, since NeuroTex did not affirmatively seek reformation, the court is not required to reform the covenant. (Response 53). While the language of the Act does not require NeuroTex to ask for reformation, the record shows that, in its Second Amended Original Petition, NeuroTex plead, "if the covenant is not enforceable to the fullest extent provided, Plaintiff requests the Court enforce such covenant to the extent provided by law." (CR 461). Thus, Pierce's argument here fails.

Pierce further argues that, since NeuroTex only sought to enforce the restriction in its summary judgment response "to the extent it encompassed counties where Pierce actually worked when employed by NeuroTex and for those doctors and hospitals," it has waived its right to reformation. (CR 846). As the case law shows, such reformation, pursuant to section 15.51, is a remedy that is only available at a final hearing, whether on the merits or by summary judgment, and not as interim relief. *Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 920 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) citing *Gray Wireline Serv., Inc. v. Cavanna*, 374 S.W.3d 464, 470 (Tex.App.-Waco 2011, no pet.). Thus, NeuroTex's request in its pleading, and in its summary judgment response, is sufficient. Pierce cites to the *Sentinel* case in support of such waiver, however this does not help him as in *Sentinel*, the trial court did reform the covenant, the issue there was the timing of such reformation. *Id.*

18

NeuroTex applies each of the restraints to its legitimate business interests in enforcing the provisions, in both its summary judgment response and its Brief, and reurges those arguments herein. (CR 835, 837; App. Brief 45-46; 50-56).

**Reply Point 8:**         **Damages are not foreclosed by statute on the breach of contract claim.**

NeuroTex set forth sufficient evidence of actual damages in its summary judgment response and in its Brief. However, now Pierce argues that even so, reformation of the noncompete precludes damages and therefore forecloses NeuroTex's breach of contract claim. (Response 53). The Covenant Not to Compete Act provides that a court may award the promisee damages, injunctive relief, or both for a breach of covenant by the promisor. TEX. BUS. & COMM. CODE § 15.50(a). <u>The Act further provides that, in the event the trial court reforms the covenant, NeuroTex is entitled to injunctive relief—not dismissal of its case.</u> TEX. BUS. & COMM. CODE § 15.51(c). The trial court committed error in granting Pierce's motion for no-evidence summary judgment.

## PRAYER

Without waiver of all other grounds for relief sought in Appellant's Brief, NeuroTex requests this Court consider this reply along with the previously filed Brief, and reverse the trial court's orders granting Appellee's motion for summary judgment, remand the cause to the trial court, and grant Appellant's court costs.

Respectfully submitted,

WIGINGTON & DANKESREITER, L.L.P.

By: _____

Eric F. Dankesreiter
Texas Bar No. 00796434
ericd@texasbuslaw.com
Debra S. Crafton
Texas Bar No. 24050458
dcrafton@texasbuslaw.com
3010 Broadmoor Lane
Flower Mound, Texas 75022
(972) 691-3677
(972) 691-5688 – facsimile

Attorneys for Appellant,
Neurodiagnostic Tex, LLC.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has

been sent to the following via electronic service provider pursuant to Tex. R. Civ. P.

21a, on this 26th day of March, 2015:

Carter Hampton                         Brent Shellhorse
Hampton & Associates                   Whitaker Chalk Swindle & Schwartz,
Flat Iron Building, 4th Floor          PLLC
1000 Houston Street                    301 Commerce Street, Suite 3500
Fort Worth, Texas 76102                Fort Worth, Texas 75102

_____
Counselor

20

# CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that sections covered by TRAP 9.4(i)(1) contain 4309 words.

_____
Counselor